UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

TERRESTAR CORPORATION, et al.,

Debtor.

ALDO ISMAEL PEREZ,

Plaintiff-Appellant,

– against –

TERRESTAR CORPORATION, et al.,

Defendants-Appellee.

**OPINION AND ORDER**
16 Civ. 1421 (ER)

Ramos, D.J.:

Aldo Ismael Perez ("Appellant"), acting pro se, appeals from a January 15, 2016 order of

the United States Bankruptcy Court for the Southern District of New York (the "January

Order").  (No. 13-01334 (SHL) Adversary Proceeding ("Adv. Proc."), Doc. 45).  The January 15,

2016 Order denied Appellant's Motion for Reconsideration of the bankruptcy court's order

entered on September 29, 2015, which dismissed the Appellant's action (the "September

Order").  (Adv. Proc., Doc. 40).  TerreStar Corporation ("TSC") and its affiliated debtors[1]

(collectively, "Appellees") moved in response to the appeal.

For the reasons set for below, the Appellant's appeal is DISMISSED and the bankruptcy

court's decision is AFFIRMED.

---

[1] Debtors include TSC, Motient Communications Inc, Motient Holdings Inc., Motient License Inc., Motient Services
Inc., Motient Ventures Holding Inc., MVH Holdings Inc., TerreStar Holdings Inc., and TerreStar New York Inc.

I.      **Background**[2]

    A.  **The Bankruptcy Court Proceedings**

TSC held equity interests in several companies that operated a terrestrial satellite network and provided two-way mobile and Internet communications services.  September Order at 1. One such company was TerreStar Networks Inc ("TSN"), which, along with certain of its affiliates, filed a Chapter 11 bankruptcy on October 19, 2010.  *In re TerreStar Networks Inc., et al.* Case No. 10-15446 (SHL).  On February 16, 2011, TSC and certain of its affiliates also filed a voluntary petition for Chapter 11 bankruptcy in the Southern District of New York.  September Order at 1.  At the time of TSC's bankruptcy filing, its only asset was the 1.4 GHz spectrum. Sec. Am. Compl. ("SAC") at ¶ 99.

As of February 16, 2011, Appellant owned approximately 220,000 shares of TSC's common stock.  September Order at 1.  Based on this equity interest, Appellant filed numerous motions and objections throughout Appellees' bankruptcy proceedings.  For example, he requested appointment of an equity committee and/or an examiner, filed numerous objections to the Appellees' second amended disclosure statement, and requested a stay of the order approving that disclosure statement pending appeal.  *Id.* at 1-2.  All of these requests were denied by the bankruptcy court.  *Id.*

On June 27, 2012, Appellees filed the third iteration of its plan of reorganization (the "Plan").  *Id.* at 2.  Appellant filed multiple objections to the Plan including, among others, objections to the failure to auction off certain of the Debtors' assets, questions regarding Debtors' assert valuation and feasibility of the Plan, and objections to the third-party releases in the Plan.  *Id.*  The bankruptcy court conducted a hearing on the confirmation of the Plan on

---

[2] This Opinion discusses only those facts necessary to decide the instant appeal.  Familiarity with the underlying facts and procedural history of this action is otherwise presumed.

October 10, 2012 during which Appellant appeared and argued against confirmation. *Id.* The bankruptcy court overruled Appellant's objections. *Id.* On October 24, 2012, the bankruptcy court entered an order confirming the Plan (the "Confirmation Order"), and the Plan subsequently became effective on March 7, 2013. *Id.* at 2-3.

### B. Appeals

Appellant has appealed two other orders of the bankruptcy court to the Southern District of New York prior to the instant appeal. On December 29, 2011, Appellant appealed the bankruptcy court's denial of an appointment of an examiner. *In re TerreStar Corp.*, No. 12 Civ. 857 (RA), 2013 WL 1767068, at *3 (S.D.N.Y. Apr. 24, 2013) ("*TerreStar I*"). On April 24, 2013, Judge Abrams dismissed the appeal as equitably moot. *Id.* at *1. On January 25, 2013, Appellant appealed the bankruptcy court's Confirmation Order. *In re TerreStar Corp.*, No. 13 Civ. 562 (GBD), 2013 WL 4477037, at *2 (S.D.N.Y. Aug. 16, 2013) ("*TerreStar II*"). Judge Daniels also dismissed the appeal as equitably moot on August 16, 2013. *Id.* at *1.

The instant appeal arises from Appellant's adversary complaint that was originally filed on April 22, 2013, the 180th day after the Confirmation Order was entered, seeking to revoke the Confirmation Order pursuant to Section 1144 of the Bankruptcy Code. September Order at 3. On May 15, 2014, Appellant filed a Second Amended Complaint which alleges that Appellees fabricated and/or concealed certain facts, such as their principal place of business and valuation of assets during the bankruptcy, the truth of which would have affected confirmation of the Plan. (Adv. Proc., Doc. 18-03). On August 7, 2014, Appellees filed a motion to dismiss the SAC, arguing that it was equitably moot, that Appellant was collaterally estopped from raising allegations that had already been addressed in earlier proceedings, and that he had failed to adequately plead that the Confirmation Plan was procured by fraud under Section 1144. (Adv.

Proc., Doc. 21).  The bankruptcy court dismissed the SAC on September 29, 2015, finding that it was equitably moot, did not satisfy Section 1144 requirements, and was barred by *res judicata*. (Adv. Proc., Doc. 40).

On October 13, 2015, Appellant filed a Motion to Reconsider the September Order. (Adv. Proc., Doc. 41).  The bankruptcy court denied that motion on January 15, 2016, finding that Appellant failed to satisfy the standard for relief under either Federal Rules of Civil Procedure 59(e) or 60(b).  (Adv. Proc., Doc. 45).  On February 24, 2016, Appellant filed a Notice of Appeal of the January Order to this Court, (Doc. 1), and filed his appeal brief on July 21, 2016, (Doc. 10).  The Appellees filed their response on August 22, 2016, which asserts that the bankruptcy court correctly found equitable mootness, and that Appellant fails to meet the statutory requirements of Section 1144.  (Doc. 11).  On November 1, 2016, Appellant filed his reply.  (Doc. 15).

## II.    Standard of Review

This Court has jurisdiction to hear appeals from decisions of a bankruptcy court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and,] with leave of the court, from other interlocutory orders and decrees . . . of bankruptcy judges."  28 U.S.C. § 158(a)(1), (3).  A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error.  *See, e.g., In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 98 (2d Cir. 1990).  A bankruptcy court's discretionary decisions are reviewed for abuse of discretion.  *See, e.g., In re Boodrow*, 126 F.3d 43, 47 (2d Cir.1997).

In reviewing a decision of a bankruptcy court, the district court "may affirm on any ground that finds support in the record, and need not limit its review to the bases raised or relied

upon in the decision [ ] below." *Freeman v. Journal Register Co.*, 452 B.R. 367, 369 (S.D.N.Y. 2010). But the district court may not consider evidence outside the record. *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (S.D.N.Y. 2008). Any arguments not raised in the bankruptcy court are considered waived; unless such a waiver results in manifest injustice, the new arguments will not be considered on appeal. *See In re Lionel Corp.*, 29 F.3d 88, 92 (2d Cir. 1994); *see also, e.g., In re Barquet Grp., Inc.*, 486 B.R. 68, 73 n. 3 (S.D.N.Y. 2012) (citing *In re Enron Corp.*, 419 F.3d 115, 126 (2d Cir. 2005).

### III.  Discussion

#### A.  Equitable Mootness

Appellant argues that the bankruptcy court erred in finding on a motion to dismiss that his action to revoke the Confirmation Plan under Section 1144 was equitably moot. He argues that whether a claim is equitably moot is a question for summary judgment, not for a motion to dismiss. Appellant's Br. at 36. He also asserts that the equitable mootness doctrine was improperly applied by the bankruptcy court to an action seeking revocation of a confirmation order under Section 1144 because it is primarily a doctrine for a district court to dismiss bankruptcy appeals. *Id.* at 36-37. Regardless of whether the bankruptcy court had erred in applying the equitable mootness doctrine, it is undisputed that *this* Court is able to dismiss the instant appeal on that basis.

Equitable mootness is a prudential doctrine under which a district court may dismiss a bankruptcy appeal "when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993) (citations omitted). Equitable mootness is a "pragmatic" doctrine that is

"grounded in the notion that, with the passage of time after a judgment in equity and implementation of that judgment, effective relief on appeal becomes impractical, imprudent, and therefore inequitable." *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144 (2d Cir. 2005) (quoting *MAC Panel Co. v. Va. Panel Corp.*, 283 F.3d 622, 625 (4th Cir. 2002)). The doctrine "requires the district court to carefully balance the importance of finality in bankruptcy proceedings against the appellant's right to review and relief." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 481 (2d Cir. 2012) (citations omitted). It provides an analytical basis for dismissing appeals from bankruptcy court orders in Chapter 11 proceedings where there is a need for finality. *In re BGI, Inc.*, 772 F.3d 102, 107 (2d Cir. 2014).

### 1.    The Plan has been substantially consummated

In the Second Circuit, a bankruptcy appeal is presumed equitably moot when the reorganization plan has been "substantially consummated." *Charter Commc'ns*, 691 F.3d at 482. "Substantial consummation," as defined by Section 1101(2) of the Bankruptcy Code, requires "(A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan;" and, finally, "(C) commencement of distribution under the plan." 11 U.S.C. § 1101(2).

Two other courts in this district have previously analyzed whether the Plan was substantially consummated in *TerreStar I* and *TerreStar II* and found that it was. On April 24, 2013, Judge Abrams found that the Plan was substantially consummated because, *inter alia*, TSC reorganized into a new, privately held corporation; cancelled its preferred and common stock; entered into a $27 million loan to refinance reorganized TSC's operations and bankruptcy; distributed substantially all secured and unsecured creditors with allowed claims under the Plan;

repaid a $4.5 million loan provided by certain TSC preferred shareholders; and transferred control of an entity that holds the license to the 1.4 GHz spectrum to the reorganized TSC. *TerreStar I*, 2013 WL 1767068 at *4-5.  On August 16, 2013, Judge Daniels additionally found, *inter alia*, that certain debtors merged, the process of issuing and distributing new common stock of the reorganized company was underway, the first board meeting of the reorganized company occurred on March 26, 2013, and property from the debtor estate was transferred to each respective reorganized TSC entity.  *TerreStar II*, 2013 WL 4477037 at *4.  Thus, Judge Daniels held that "[n]early everything contemplated by the Plan has been consummated."  *Id.*  The bankruptcy court adopted these findings in its September Order, noting that those findings are law of the case.  September Order at 6-8.

Though this Court is not bound by these previous rulings, the law of the case doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (citation omitted).  Adversary proceedings filed in the same bankruptcy case do not constitute different cases.   *Cf Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001) ("Courts apply the law of the case doctrine when their prior decisions in an ongoing case either expressly resolved an issue or necessarily resolved it by implication"); *see Cohen v. Bucci*, 905 F.2d 1111, 1112 (7th Cir.1990) (stating that "[a]dversary proceedings in bankruptcy are not distinct pieces of litigation; they are components of a single bankruptcy case").  "[C]ourts are understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court." *Ali*, 529 F.3d at 490 (citation omitted); *see also In re Club Ventures Investments LLC*, 507 B.R.

91, 100 (S.D.N.Y. 2014) ("Though [another district judge's] ruling is not binding on this Court, the law of the case doctrine counsels against heedlessly revisiting prior rulings in a case").

Appellant has pointed to no intervening change of law, new evidence, or need to correct a clear error that would counsel this Court to depart from the two previous rulings of this district. He only states that Appellees have provided insufficient or vague details regarding what official action was taken by the new board of directors and which entities have merged. Appellant's Br. at 46. He does not dispute that those events have occurred. Thus, this Court finds that the Plan is substantially consummated, and thus, that the appeal is presumptively equitably moot.

### 2. Appellant fails to overcome the presumption of equitable mootness

This presumption of equitable mootness can be overcome if *all* five of the factors set out in *In re Chateaugay Corp.*, 10 F.3d 944 (2d Cir. 1993) are met:

> (1) "the court can still order some effective relief";
> (2) "such relief will not affect the re-emergence of the debtor as a revitalized corporate entity";
> (3) "such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court"
> (4) "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings"; and
> (5) "the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from."

*Id.* at 952–53 (internal citations, quotations, and alterations omitted). Thus, in examining the argument that a claim is equitably moot, a court must inquire into the likely effects of the relief an appellant seeks. *Charter Commc'ns.*, 691 F.3d at 482. "Only if all five *Chateaugay* factors are met, and if the appellant prevails on the merits of its legal claims, will relief be granted." *Id.* Though Appellant was notified of the burden to prove the five *Chateaugay* factors in his two previous appeals, he again fails to address *any* of the five factors. As relevant to the analysis, the

bankruptcy court correctly found that it could not provide Appellant effective relief because, *inter alia*: (1) revocation would require TSC to claw back over $6 million in payments to creditors, (2) inquiries into transactions already consummated would be required and would create an unmanageable and uncontrollable situation, and (3) Appellant failed to give notice of the SAC to all parties who would be adversely affected by the potential revocation of the Plan. September Order at 9. There is no clear error in the bankruptcy court's factual determinations, and this Court holds that the instant appeal is equitably moot.

### B. Bankruptcy Code Section 1144

Appellant's action also fails because it does not meet the statutory requirements of Section 1144. Under Section 1144 of the Bankruptcy code, a party can seek to revoke an order of confirmation, before 180 days[3] after its entry, "only if such order was procured by fraud." 11 U.S.C. § 1144. However, "[r]elief under § 1144 is discretionary; the Court may but need not revoke the confirmation order if it finds fraud." *In re Trico Marine Servs., Inc.*, 337 B.R. 811, 814 (Bankr. S.D.N.Y. 2006). Additionally, Section 1144(1) requires all revocations of confirmation orders to "contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation." 11 U.S.C. § 1144(1). If a court cannot fashion such relief, it has no discretion to revoke the confirmation order regardless of the presence of fraud. *In re Delta Air Lines, Inc.*, 386 B.R. 518, 534 (Bankr. S.D.N.Y. 2008).

---

[3] The bankruptcy court stated that it is not clear that Appellant complied with the letter of the law because he filed his action on the 180th day. September Order at 12. Appellant argues that his action was nevertheless timely because the 179th day was a Sunday, and the Federal Rules of Bankruptcy Procedure 9006 states that if the last day of the time period is a Sunday the period continues to run until the end of the next day. Appellant's Br. at 18. The Court need not decide this issue because regardless of whether his action was timely, his action fails to satisfy the other requirements of Section 1144.

### 1.      Innocent parties cannot be protected upon revocation of the Plan

The bankruptcy court correctly found that it could not protect innocent unsecured creditors that acquired rights in reliance on the Confirmation Order if the Plan were revoked. September Order at 11.  Furthermore, in arguing that the bankruptcy court has erred, Appellant does not state how the bankruptcy court may fashion such relief.  Instead, he mistakenly claims that only the preferred shareholders, who he asserts are not innocent parties, will be harmed by the revocation.  Appellant's Br. at 39.  The fact that distributions have already been made to secured and unsecured creditors under the Plan contradicts Appellant's assertion.  *Terrestar I*, 2013 WL 1767068 at *5.  The Court thus finds that the Plan cannot be revoked pursuant to Section 1144 because there is no relief that could protect the unsecured creditors that have already relied on the Plan, among others.

### 2.      Appellant fails to adequately allege fraud

Appellant further fails to adequately allege that the Confirmation Order was procured by fraud.  Federal Rule of Civil Procedure 9(b) requires plaintiffs alleging fraud to "state with particularity the circumstances constituting fraud or mistake."  *In re: Emmons-Sheepshead Bay Dev., LLC*, 662 F. App'x 100, 103 (2d Cir. 2016) (applying Rule 9(b) to a Section 1144 claim). Stating with particularity "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud."  *Kane ex rel. U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 382 (S.D.N.Y. 2015) (citation omitted).  Furthermore, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent."  *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  This inference can be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *In re Carter-Wallace, Inc.,*

10

*Sec. Litig.*, 220 F.3d 36, 39 (2d Cir. 2000) (citation omitted).  The Court finds that Appellant fails to the meet the pleading standards and fails to plead that the Confirmation Order was procured by fraud, or is prevented from making his allegations by *res judicata*.[4]

           **i.**       **Fabrication of venue**

Appellant alleges that TSC fabricated venue in the Southern District of New York.  SAC at ¶ 37.  He states that had the bankruptcy court known about the fabricated venue, the bankruptcy court would not have entered the Confirmation Order, and instead, would have ordered an investigation to determine the fraudulent intent behind the fabricated venue.  *Id.* However, as the bankruptcy court notes, objections to venue can be waived.  September Order at 13 n. 3.  Once waived, the bankruptcy proceeding can remain in the Southern District of New York and venue issues would have no effect on the Confirmation Order.

Furthermore, instead of pleading fraudulent intent, Appellant expressly disclaims knowledge of Appellees' intent, alleging that "at this juncture, it is impossible to divine TSC's precise motivation for improperly seeking refuge in the Southern District of New York."  SAC at ¶ 33.  Instead, he asks the Court to presume a fraudulent and strategic purpose behind Appellee's fabrication of venue.  *Id.*  He also states that fraudulent purpose "can be precisely determined through discovery," *Id.* at ¶ 35, and argues that it is not his burden to discern the precise motive behind this alleged fabrication of venue, Appellant's Br. at 25.  Under Rule 9(b), Appellant has it exactly wrong; it is his burden to show a strong inference of fraudulent intent and his conclusory

---

[4] Appellant urges this Court to adopt the test for fraud in *Tenn-Fla Partners v. First Union Nat. Bank of Florida*, 229 B.R. 720 (W.D. Tenn. 1999).  Appellant's Br. at 31-32.  *Tenn-Fla* held that a party's non-disclosure under Section 1144 is fraud when there is:  "(1) an intentional omission; (2) by a party with a duty to disclose; (3) of facts that would be material to finding the party complied with § 1129; (4) that were withheld so that the court would find the party complied with § 1129; (5) and that as a consequence of such non-disclosure, the court entered the confirmation order." *Id.* at 731.  However, Appellant has not alleged the above elements with particularity, which Rule 9(b) requires, such as how any of the alleged omissions relate to compliance with § 1129.  Thus, even if the Court were to apply the test in *Tenn-Fla*, Appellant's pleadings would be insufficient.

and speculative allegations fail to do so.  This Court cannot presume fraudulent intent because Appellant has not adequately alleged that Appellees had motive to commit fraud, or alleged facts constituting circumstantial evidence of conscious misbehavior or recklessness.

### ii.   Concealed identity of the TSC's insiders and control persons

Appellant also alleges that TSC failed to fully disclose the identity of its insiders or control persons, which he claims are TSC's three preferred shareholders:  Highland Capital Management, LP ("Highland"), Solus Alternative Asset Management, LP ("Solus"), and Harbinger Capital Partners LLC ("Harbinger").  SAC at ¶¶ 41-42.  Specifically, he asserts that the preferred shareholders were disguised as "Bridge Lenders" and "Exit Facility Lenders"[5] to conceal from the bankruptcy court their control over TSC's management and bankruptcy as well as their intention to take over TSC.  *Id.* at ¶¶ 51-52.  He also states that the preferred shareholders were able to "secure the Confirmation Order through the fabricated, impaired cram down vote of the 'Bridge Lenders.'"  *Id.* at ¶ 52.  Appellant's allegations are either flatly refuted by the record or are conclusory.

The record conclusively establishes that TSC had disclosed its relationship with its preferred shareholders, and the identity of the Bridge Lenders and Exit Facility Lenders.  Jeffrey W. Epstein, the former President and CEO of TSC, disclosed in his declaration that Harbinger and/or its affiliates lease rights to use the 1.4 GHz spectrum, and that Highland, Solus and Harbinger are its preferred shareholders.  (Bankr. Dkt., Doc. 5 at ¶¶ 1, 16, 23).  Further, TSC disclosed in its Second Amended Disclosure Statement that the Bridge Lenders were Solus, Harbinger, Highland and/or affiliates thereof, and described the structure of the loan and its repayments.  (Bankr. Dkt., Doc. 338 at 23).  TSC also stated that one of its creditors believes that

---

[5] Appellant states that the Exit Facility Lenders are lenders providing post-confirmation financing and are the source of the debtor-in-possession ("DIP") financing.  SAC at ¶ 50.

the TSC preferred shareholders may have been seeking to engineer an impaired, consenting class of claims in structuring the timing of the repayment of the loan. *Id.* The bankruptcy court was also informed at the hearing on the final DIP order that the three preferred shareholders were the Bridge Lenders and DIP lenders. (Bankr. Dkt., Doc. 61 at 33:21-23). Thus, the preferred shareholders were not "disguised" as Bridge Lenders and Exit Facility Lenders since this information had been disclosed, quite plainly, to the bankruptcy court.

Appellant also fails to sufficiently allege that the preferred shareholders used their control nefariously. He only states in conclusory fashion that the preferred shareholders used their control to delay TSC's bankruptcy filing, fabricate defaults under the Bridge Loans, provide DIP financing even though more favorable sources of DIP financing were available, determine the structure of the Plan, and allow TSN's asset to be auctioned to an insider, EchoStar. SAC at ¶¶ 43-49. His allegations are entirely devoid of any particular circumstances surrounding the alleged fraud. Under Rule 9(b), it is insufficient to merely allege that the preferred shareholders caused these various events to occur without alleging who was specifically involved and how the fraud occurred.

### iii.        Improper silencing of a creditor and an equity holder

Appellant further asserts that Elektrobit, a creditor of the Appellees, and Marathon Asset Management, a holder of TSC's common stock, had their objections silenced through preferential treatment, and that this preferential treatment was concealed from the bankruptcy court. *Id.* at ¶¶ 61, 66-68. However, he acknowledges that the bankruptcy court was made aware of their objections. Indeed, Appellant states that "Elektrobit had undertaken discovery in the bankruptcy proceedings and had *filed pleadings* supported by this discovery" and that "Marathon Asset Management . . . elicited testimony from TSC's financial consultant." *Id.* at ¶¶

63-64 (emphasis added).  Appellant does not adequately describe what objections or potential

objections were improperly silenced by Appellees.  *Id.* at ¶¶ 66, 68 (failing to describe what

"opposition" was silenced by the alleged preferential treatment).

iv.        **Concealed insider transfers and undervalued assets**

Lastly, Appellant argues that Appellees concealed insider transactions and/or the true

values of the following assets:  the 2.0 GHz spectrum, 1.6 GHz spectrum and 1.4 GHz spectrum.

*Id.* at ¶¶ 70-117.  The 2.0 GHz spectrum was sold by TSN, whose bankruptcy had proceeded

separately, and any alleged misconduct regarding this sale cannot show how fraud procured the

Confirmation Order in the present case.  *Id.* at ¶ 84.

Furthermore, valuations of the 1.6 GHz and 1.4 GHz spectrums have both been reviewed

by the bankruptcy court, who considered valuations by TSC's financial advisor and objections to

those figures.  The bankruptcy court overruled the objections, finding that TSC's valuations were

credible.  (Bankr. Dkt., Doc. 675 at 121:12-128:6; 134:5-8).  The bankruptcy court found that

those overruled objections were essentially repeated in the SAC, and refused to revisit these

issues on *res judicata* grounds.  September Order at 12-13 (citing *Burgos v. Hopkins*, 14 F.3d

787, 789 (2d Cir. 1994) ("[A] final judgment on the merits of an action precludes the parties or

their privies from relitigating issues that were or could have been raised in that action").  It also

refused to consider a new report issued by an entity named Jarvinian, on which Appellant relied

on to bolster its claim that 1.4 GHz spectrum was under-valued.  *Id.* at 13 n.2.  The bankruptcy

court found no basis to use the Jarvinian report to impeach TSC's valuation because that report

was issued almost a year after the confirmation hearing, and Appellant provided no reason to do

so.  *Id.*  This Court finds no clear error in the bankruptcy court's prior factual determinations, and

agrees that *res judicata* applies here where Appellant already had adequate opportunities to

14

dispute the valuations of TSC's assets at the confirmation hearing, including the opportunity to cross examine TSC's financial advisor who had provided a detailed explanation of the valuations. (Bankr. Dkt., Doc. 675 at 88:9-89:17).[6]

* * *

The bankruptcy court correctly dismissed the Appellant's action, and it did not err in denying Appellant's motion to reconsider its decision. Appellant's motion could not demonstrate any law or fact that the bankruptcy court overlooked and merely sought to relitigate the issues. *See Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) ("[R]econsideration [under Rule 59] will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked"); *Whitaker v. N.Y. Univ.*, 543 F. App'x 113 (2d Cir. 2013) ("[A] Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided").

## III.   Conclusion

For the reasons set forth above, the bankruptcy court's January Order is AFFIRMED. The Clerk of the Court is respectfully directed to docket this decision and close the case.

It is SO ORDERED.

Dated:    March 15, 2017
          New York, New York

Edgardo Ramos, U.S.D.J.

---

[6] Appellant was able to raise both his objections regarding 1.6 GHz spectrum and the 1.4 GHz spectrum in the confirmation hearing. (Bankr. Dkt., Doc. 675 at 107:1-108:25; 112:13-114:25)  Appellant states that the undervaluation of the 1.6 GHz spectrum argument is not prevented by *res judicata* because the bankruptcy court had deemed these issues not relevant to the confirmation. Appellant's Br. 33-34. However, this shows that the bankruptcy court *had* previously considered the objection, and merely reached a conclusion not to Appellant's liking.